UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| LIBERTY MEDIA HOLDINGS, LLC, | CASE NO. 11 CV 0652 MMA (BLM) |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION FOR DEFAULT JUDGMENT** |
| vs. | [Doc. No. 16] |
| ERIC HENSON, | **DISMISSING COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |
| Defendant. | |

Currently before the Court is Plaintiff Liberty Media Holdings, LLC's second motion for default judgment against Defendant Eric Henson. [Doc. No. 16.] On March 14, 2012 the Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **DENIES** Liberty's motion and **DISMISSES** the complaint for lack of personal jurisdiction.

### BACKGROUND

**I.   FACTUAL ALLEGATIONS**

On March 31, 2011 Plaintiff Liberty Media Holdings, LLC ("Liberty") filed an action against Defendant Eric Henson for copyright infringement. [Doc. No. 1.] According to Liberty's brief complaint, the company creates and publishes original adult films. [¶5.] Individuals can purchase a monthly membership that allows them to view the films on Liberty's websites. [¶6.]

Liberty also offers some of its films for sale on DVD. [¶7.] At issue in this action is one specific film—Down on the Farm—to which Liberty holds the copyright. [¶10; Doc. No. 1, Exh. 1.]

According to Liberty, Defendant downloaded the Down on the Farm film without Liberty's permission, and then uploaded the film, making it available to other internet users. [¶8.] The gravaman of Liberty's action is that Defendant unlawfully used a program called "BitTorrent" to view, use and make the film available for distribution to other internet users in violation of Liberty's copyright. [¶12.]

**II.     PROCEDURAL POSTURE**

Liberty filed its complaint on March 31, 2011, and a summons was issued the same day. [Doc. Nos. 1, 2.] The docket reflects no activity until October 14, 2011, when the Court set an order to show cause hearing for failure to serve Defendant within the time permitted by Federal Rule of Civil Procedure 4(m). [Doc. No. 3.] The same day, Liberty filed a proof of service, purportedly demonstrating Defendant had been personally served with the complaint and summons on April 22, 2011. [Doc. No. 4.] On October 14, Liberty also filed a request for entry of Clerk's Default. [Doc. No. 6.] The Clerk entered default on October 17. [Doc. No. 7.] The same day, Liberty filed a motion for entry of default judgment on the ground that Defendant failed to answer or otherwise respond to Liberty's complaint. [Doc. No. 8.]

On November 22, 2011, the Court denied Liberty's motion for default judgment and set aside the Clerk's entry of default because Liberty's proofs of service were deficient. [*See* Doc. No. 10.] The Court explained that it was not convinced Defendant had notice of Liberty's claims against him, and ordered Liberty to effect proper service of the complaint and summons on Defendant within thirty days. [*Id*.] Later that day, Liberty returned an executed summons indicating it had personally served Defendant in Moscow, Idaho on November 22. [Doc. No. 11.]

On January 24, 2012, Liberty filed a renewed request for Clerk's Entry of Default, which the Clerk of Court granted the following day. [Doc. No. 14, 15.] Liberty then filed the pending motion for entry of default judgment on February 3, 2012. [Doc. No. 16.] Defendant has not appeared since Liberty initiated this action nearly one year ago, and has not opposed Liberty's current motion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a plaintiff can request the Clerk of Court to enter default against a defendant who has failed to answer or otherwise respond to the plaintiff's complaint. FED. R. CIV. PROC. 55(a)-(b)(1). After the Clerk enters default, the plaintiff may apply to the district court for entry of a default judgment against the defendant. FED. R. CIV. PROC. 55(b)(2). Default judgments generally are disfavored because "cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In reality, however, "default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc*., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999)). The decision to grant or deny a motion for entry of default judgment lies within the sound discretion of the trial court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

After an entry of default by the Clerk, well-pled allegations in the complaint are deemed true, except as to the amount of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). In the Ninth Circuit, a district court must consider seven factors when deciding whether to grant a motion for default judgment, including: "(i) the possibility of prejudice to the plaintiff; (ii) the merits of plaintiff's substantive claims; (iii) the sufficiency of the complaint; (iv) the sum of money at stake in the action; (v) the possibility of a dispute concerning material facts; (vi) whether the default was due to excusable neglect; and (vii) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72.

## DISCUSSION

### I. SERVICE OF PROCESS

As a preliminary matter, the Court "must first assess the adequacy of the service of process on the party against whom default judgment is requested." *Bricklayers & Allied Craftworkers Local Union No. 3 v. Palomino*, 2010 U.S. Dist. LEXIS 59095 *7 (N.D. Cal. June 2, 2010) (citations omitted). In response to the Court's November 22 Order, Liberty filed a proof of service indicating Jason House of One Legal LLC, 504 Redwood Blvd., Suite 223, Novato, California 94947 personally served Defendant Eric Henson on November 22, 2011 at 3:40p.m., at First Step

Internet, 1420 S. Blaine Street, Moscow, Idaho 83843. [Doc. No. 11.] Liberty served copies of its motion for default papers via mail to the same Idaho address on February 3, 2012. [Doc. No. 17.] On its face, service appears proper. Before the Court can turn to the *Eitel* factors, however, it must first determine whether it has jurisdiction over Defendant.

## II.    JURISDICTION

The Court has subject matter jurisdiction over Liberty's copyright infringement claims. 17 U.S. C. § 101 *et seq.*; 28 U.S.C. § 1331. With respect to personal jurisdiction, however, the answer is less clear. Liberty's complaint does not allege where Defendant resides. Instead, Liberty insinuates that Defendant is not a resident of California, by summarily alleging the Court has personal jurisdiction over Defendant because he committed wrongful acts within California, or aimed toward California, knowing the negative consequences would be felt in this State. [Doc. No. 1, ¶3.] Liberty's proofs of service also indicate Defendant resides out-of-state, as he was purportedly personally served in Moscow, Idaho. [*See* Doc. Nos. 11, 17.] Liberty further asserts "Defendant contractually consented to jurisdiction in this jurisdiction and venue," but fails to provide any facts to support this allegation. [Doc. No. 1, ¶3.] Although the Court assumes the truth of Liberty's allegations on a motion for default, the Court need not accept legal conclusions as true. Accordingly, the Court must determine whether the facts alleged support exercising personal jurisdiction over Defendant.

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *International Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945). While personal jurisdiction may be general or specific, here, the narrow allegations suggest only specific jurisdiction is plausible.

To determine whether specific personal jurisdiction exists over a nonresident defendant, the Court undertakes a three-prong analysis:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id*. at 1227-28 (italics in original) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004)).

**(1)   Purposeful Direction**

The first prong "refers to both purposeful direction and purposeful availment. . . . [However,] in cases involving tortious conduct, [the Ninth Circuit] most often employ[s] a purposeful direction analysis." *Id*. at 1228 (citation omitted). Because copyright infringement is an intentional tort, here, the Court considers whether Defendant purposefully directed his conduct toward California. *Brayton Purcell*, 606 F.3d at 1128 (citation omitted). To do so, the Court applies the "three-part '*Calder*-effects' test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 . . . (1984)." *Id*. "Under this test, the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. (citations and internal marks omitted).

A.   Intentional Act

With respect to the first element under *Caldera*, Liberty asserts the intentional act requirement is satisfied because Defendant cannot accidentally upload or download Liberty's copyrighted material using BitTorrent. [Doc. No. 16 at p.5.] The Court agrees. Assuming Liberty's allegations are true, Defendant acted intentionally when he allegedly downloaded the

1  BitTorrent software to share files, and when he illegally uploaded Liberty's film to share with
2  other internet users. [Doc. No. 1, ¶¶8, 12.]

        B.      <u>Expressly Aimed</u>

As for the second element, however, the complaint does not establish Defendant's actions were expressly aimed at California. The complaint accuses Defendant of uploading a copy of Liberty's film Down on the Farm, without Liberty's permission, and using BitTorrent software to share the film with other internet users. [Doc. No. 1, ¶¶8, 12.] The complaint does not allege how Defendant expressly aimed these activities toward California. Instead, Liberty devotes a significant portion of its motion for default judgment to explaining how the BitTorrent program works. [*See* Doc. No. 16, p.3, 5-9.]

The Court declines to reiterate the nuances of file sharing using the BitTorrent software here, as this District recently considered, and rejected Liberty's argument that participation in a BitTorrent "swarm" by an out-of-state defendant is sufficient to satisfy the second element of the *Caldera*-effects test. *Liberty Media Holdings, LLC v. Tabora*, 2012 U.S. Dist. LEXIS 1101 *9-13 (S.D. Cal. Jan. 4, 2012), Case No. 11-cv-651-IEG-JMA. As in *Tabora*, Liberty's conclusory assertion that Defendant "expressly aimed his conduct at San Diego" is entirely deficient, and does not satisfy the second prong of the *Caldera*-effects test. [Doc. No. 16, ¶4.]

        C.      <u>Foreseeability of Harm in California</u>

The third element in the *Calder*-effects test requires that Defendant knew his actions would likely cause harm in California. In its motion for default judgment, Liberty argues Defendant was on notice that "Liberty was located in San Diego" because the first frame of the film plainly states, the "producer's records custodian" maintains the records for "Down on the Farm" in San Diego, California. [Doc. No. 16, ¶Doc. No. 16-3, Exh. A.] Therefore, according to Liberty, Defendant was also on notice that his unlawful actions would affect Liberty in California. Liberty's position is problematic and unpersuasive for at least two reasons.

First, Liberty's complaint does not allege anything about the content of the film, including the first frame. Liberty provides this information for the first time in connection with its motion for default judgment. Second, the information on the first screen of the Down on the Farm film is

1  a records keeping requirement compliance statement required by 18 U.S.C. § 2257. [Doc. No. 16-
2  3, Exh. A.] The screen states: "18 U.S.C. § 2257 Records Keeping Requirements Compliance
3  Statement . . .the records required by federal law will be made available by the producer's records
4  custodian at the following location:

> 2257 Compliance Manager
> 3969 4th Avenue, Studio 300
> San Diego, CA 92103"

7  *Id.* The text does not mention Liberty, nor provide any indication that Liberty—the named
8  Plaintiff in this action—is located in California. Further, Liberty cannot argue it would be
9  reasonable for Defendant to assume Liberty shared an office with its "2257 Compliance Manager,"
10 because the complaint alleges Liberty's "mailing address [is] 302 Washington Street, Suite 321,
11 San Diego, CA 92103." [Doc. No. 1, ¶4.]
12     Judge Gonzalez rejected this same argument in *Tabora*, 2012 U.S. Dist. LEXIS 1101 *14-
13 17, noting that the compliance statement did not provide the address for the producer of the film
14 nor the copyright owner (i.e. Liberty). *Id*. at 16. "Therefore, even if the Court were to assume that
15 [Defendant] saw and read this title screen, this evidence does not show that he had knowledge of
16 Plaintiff's location. It is merely evidence showing that he might have knowledge of the location of
17 Plaintiff's records custodian." *Id*. Accordingly, Liberty also fails to establish the third element of
18 the *Caldera*-effects test.

19     **(2)    Remaining Personal Jurisdiction Factors**

20     Because Liberty failed to satisfy the first element in the personal jurisdiction analysis—that
21 Defendant purposefully directed his activity at California—the Court need not consider the
22 remaining two factors (i.e. whether the claim arises from defendant's forum-related activities; and
23 whether exercising jurisdiction is reasonable).

24 **III.   *EITEL* FACTORS**

25     Likewise, the Court does not reach the merits of Liberty's motion for default judgment
26 because the Court concludes it lacks personal jurisdiction over Defendant. Although the Ninth
27 Circuit has suggested that courts should give the plaintiff an opportunity to demonstrate the
28 existence of facts supporting personal jurisdiction over the Defendant before *sua sponte* dismissing

the complaint, the Court concludes Liberty has had ample opportunity to properly plead its case. *See Tabora*, 2012 U.S. Dist. LEXIS 1101 *28-29, n.3 (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)). A review of the record reveals that Liberty initiated this action nearly one year ago, and repeatedly failed to diligently pursue its claims. On multiple occasions the Court set hearings instructing Liberty to show cause why the action should not be dismissed for failure to prosecute, Liberty failed to timely effect service of process on Defendant, and the pending motion for default judgment is Liberty's third attempt at this particular motion. Liberty has had ample opportunity to provide the Court with the required information and has chosen not to do so. Accordingly, the Court does not find any just reason to delay dismissing this action *sua sponte* for lack of personal jurisdiction. *See In re Tuli*, 172 F.3d at 712 (in ruling on motion for default judgment court may *sua sponte* dismiss for lack of jurisdiction); *Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction).

### CONCLUSION

For the reasons set forth above, the Court **DENIES** Liberty's motion for entry of default judgment [Doc. No. 16] and **DISMISSES** the complaint for lack of personal jurisdiction. The Clerk of Court shall set aside the Clerk's default entered on January 25, 2012 [Doc. No. 15] and close the case file.

**IT IS SO ORDERED.**

DATED: March 21, 2012

Hon. Michael M. Anello
United States District Judge